## CASS COUNTY v. WILBARGER COUNTY.

### Decided January 12, 1901.

**1.—County Bonds—Funding Indebtedness—Coupons.**

County bonds issued under the Act of April 14, 1889, for the purpose of funding the county's indebtedness, were not rendered invalid by the fact that, instead of making the principal payable in twenty years, with coupons for the annual interest, the bond and coupons provided for payment each year of the annual interest, and also the 2 per cent of principal for which the act authorized the levy of taxes.

**2.—Same—Innocent Purchaser—Notice of Law.**

A purchaser of county bonds showing on their face that they were issued by virtue of an act of the Legislature specifically recited therein is bound to take notice of the purpose and provisions of such act, and the decisions of the courts holding that counties can not issue bonds unless expressly authorized by law to do so.

**3.—Same—Purchaser Protected in What.**

But an innocent purchaser will be protected where the power of the commissioners court to issue the county bonds depended upon facts to be ascertained and conclusions to be reached by that court as to the probable county expenses, and amount of revenue required, and likely to arise from taxation, to meet the same during the life of the bonds, though the conclusion of the court upon such facts was erroneous.

**4.—Same—Constitutional Law—Current Expenses of County.**

Section 9, article 8, of the Constitution, as amended in 1883, did not prohibit the commissioners court from levying, under the Act of 1889, an annual tax to meet the principal and interest of bonds issued for funding general county indebtedness, though such levy, by consuming a part of the 25 cents on the $100 valuation, permitted by the Constitution to be levied for "county purposes," impaired to that extent the power to make future annual levies for meeting the necessary current expenses of the county, the debts so funded being already payable out of taxes to be levied for county purposes.

**5.—Same—Queries as to Constitutional Law and "Creation of Debt" by Funding.**

See the opinion for question suggested and discussed, though not authoritatively determined, as to whether, under section 9 of article 8 of the Constitution, as amended in 1883, a county may be empowered to levy a tax for meeting its past indebtedness in addition to the 25 cents on the $100 permitted to be levied for county purposes; and also as to whether the funding of a debt by the issuance of bonds is the creation of a debt within the meaning of the constitutional provisions requiring a tax levy to pay the interest and create an adequate sinking fund to absorb the principal.

**6.—Same—Proofs of Sufficiency of Levy to Pay Bonds.**

Where the tax levy made sufficed to meet for the first five years the payment of principal and interest falling due on county bonds, this made a prima facie case, if the burden was upon the holder of the bonds to show sufficiency of the levy; but if it did not, see recitals in the face of the bonds and facts proven sufficient to bring the case within the estoppel declared by the validating Act of April 20, 1899 (amendatory of Revised Statutes, articles 3892-3894).

Error from Wilbarger.   Tried below before Hon. G. A. Brown.

*Montgomery & Hughes,* for plaintiff in error.

*Huff & Hall,* for defendants in error.

STEPHENS, ASSOCIATE JUSTICE.—Under an act of the Legislature entitled "An act to authorize counties to fund their indebtedness and to provide means to pay the same," approved April 14, 1889 (Acts of 1889, page 89), the Commissioners Court of Wilbarger County made and entered an order, February 14, 1890, providing for the issuance of forty bonds to the amount of $20,000, that being the amount of the outstanding indebtedness of Wilbarger County incurred prior to the 1st day of January 1889, for current expenses, and represented by valid county warrants duly registered and payable out of the common or third class funds, the bonds, in denominations of $500, to become due in twenty years, but to be paid off at any time after two years at the pleasure of the county, and to bear interest at the rate of 6 per cent per annum, payable annually. The order also provided that 2 per cent of the principal should be paid annually and included in the interest coupons to be attached to the bonds.

The order further provided for a tax levy as follows: "That a tax of 5 cents on the $100 valuation of all property in said county subject to taxation be and is hereby levied for the purpose of paying the interest and annual 2 per cent of the principal of said bonds and the costs of collecting and assessing said tax, and that this levy of taxes shall continue in force until the whole amount of the principal and interest of said bonds shall have been fully paid."

The following is a copy of one of the bonds:

"No. 21.                                                          "$500.00
            "THE STATE OF TEXAS, COUNTY OF WILBARGER.

"The county of Wilbarger, in the State of Texas, acknowledges itself to be indebted to bearer in the sum of five hundred dollars, and promises to pay same in lawful money of the United States as follows: Three hundred dollars thereof on the 10th day of April in the year 1910, and $10 on the 10th day of April of each year prior to 1910; together with interest at the rate of six per cent per annum, which interest shall be payable on the 10th day of April in each year, and shall be computed on the balance of the principal due from time to time. The said installments of principal and interest to be evidenced by coupons hereto attached. Principal and interest payable at the St. Louis National Bank, in the city of St. Louis, State of Missouri. This bond is redeemable at any time after two years from the date of its issuance and before maturity at the pleasure of the county. This bond is issued under and in compliance with the Constitution and laws of the State of Texas, and particularly an act entitled 'An act to authorize counties to fund their indebtedness and to provide means to pay same, approved April 14, 1889,' and for the purpose of settling and funding an existing indebtedness lawfully made and undertaken by said county, by authority of law, prior to January 1, 1889, which said indebtedness so created amounts to the sum of twenty thousand dollars, and was created on account of valid subsisting and unpaid county warrants, issued in settlement of claims allowed by the commissioners court for current expenses of said county incurred prior to January 1, 1889. This bond is one of a series of forty bonds of the same tenor and effect, and is further issued under and by authority of the order of the Commissioners Court of Wilbarger County, made at a regular term thereof on the 14th day of February, 1890, a full court being present.

"Witness the county judge of said Wilbarger County, Texas, attested by the county clerk thereof, and with the seal of the County Commissioners Court affixed thereto, on this 14th day of February, 1890.

"Attest: L. N. PERKINS, County Clerk Wilbarger County, Texas.
                                    [Seal]      "L. C. HEARE,
                        "County Judge, Wilbarger County Texas.
"Registered in my office the 14th day of March, 1890.
                                          "W. A. MCKINNEY,
                        "County Treasurer Wilbarger County, Texas."

The following is a copy of one of the coupons:

"No. 6.  "$37.00

"The County of Wilbarger, State of Texas, will pay to the bearer on the 10th day of April, 1896, at the St. Louis National Bank, St. Louis, Mo., ten dollars, being two per cent of the principal bond No. 21, and twenty-seven dollars interest to said date on said bond.

"L. C. Heare,

"County Judge Wilbarger County, Texas.

"Attest: L. N. Perkins,

"County Clerk Wilbarger County, Texas."

On this issue of coupon bonds eleven, being those put in issue in this suit, were acquired by appellant at the time and in the manner stated in the following testimony of the county judge of Cass County: "They were bought from J. W. Campbell, cashier of the First National Bank of Atlanta, Texas. I bought the bonds for Cass County under authority of an order of the Commissioners Court of Cass County, passed on June 16, 1893, a certified copy of which is hereto attached and marked exhibit A. Cass County purchased said bonds through me from J. W. Campbell in June or July, 1893. I paid $1 or $1.02 on the dollar for them. The money was paid to J. W. Campbell by me. That is, the county treasurer paid same in my presence and received the bonds. There was no warrant issued. The money was paid out of the non-available or permanent school fund of Cass County. Neither myself or any of the county commissioners of Cass County knew anything about said bonds or coupons except what said bonds and coupons showed on their face, at any time before same were acquired and the money for them actually paid by Cass County. They appeared to be all right on their face, and no investigation was made. We knew nothing about the issuance of said bonds except what is shown on their face. I don't remember to have ever submitted said bonds to the attorney general. I never made any examination of the records of Wilbarger County."

The fourth paragraph of the statement of facts shows that: "It was admitted by the defendant that the bonds and coupons sued on, together with the other like bonds referred to in the order authorizing their issue, were sold by Wilbarger County, Texas, to defendant for $20,050 in cash, and that said sum was actually received by the county treasurer of Wilbarger County on the 18th day of March, 1890, and that Wilbarger County regularly paid the interest and payments of principal as provided by the coupons attached to said bonds, from their issuance up to and including the interest falling due April 10, 1895, and that the interest and principal coupons falling due on the bonds sued on, due on April 10, 1894 and 1895, was paid to plaintiff, Cass County."

From the foregoing statements and quotations it is evident, we think, that the first objection interposed to the bonds and coupons sued on,

-to wit, that instead of bonds for $500 each, ·payable in twenty years, with annual interest coupons attached, 2 per cent of the principal sum was included in the interest coupons, should have been overruled. Acts 1889, p. 89; Acts 1899, p. 143; Nolan County v. State, 83 Texas, 201, and authorities there cited. At all events, if the Act of 1889 was not substantially complied with in the manner of issuing the bonds, and the defect was not cured by the Act of 1899,—counsel for defendant in error contending that that act is in conflict with section 53, article 3, of the Constitution, supposed by them to have been overlooked in State v. Nolan County, supra,—the bonds were not on that account wholly invalid, as seems to have been held in the judgment appealed from. Noel Young Bond Co. v. Mitchell County, 21 Texas Civ. App., 638, in which writ of error was refused.

The main and most serious objection raised to the bonds was that the Commissioners Court of Wilbarger County had no power to make the tax levy of 5 cents, as shown in the order, to pay them, because it was not a levy for "county purposes," or, if so, it was an attempt to limit future commissioner courts to an annual levy for "county purposes" of only 20 instead of 25 cents, as provided in the Constitution. Section 9 of article 8 of the Constitution, as amended in 1883, prohibited any county from levying for any year more than 25 cents on the $100 valuation of the taxable property of the county for "county purposes," from which it is argued that that per cent of taxation was intended to be reserved by the Constitution to meet the annual expenses of county government, for otherwise the commissioners court might, in the issuance of bonds under the Act of 1889 cited above, by levying for a series of years the full 25 cents for their payment, render a county incapable of performing its political functions. This contention seems plausible, but is met or sought to be avoided with the proposition, among others, that as Cass County was an innocent purchaser of the bonds in question, the defense, if otherwise tenable, was not available in this case, since there was nothing on the face of the bonds or the order under which they were issued to charge the said county with notice of any fact rendering them invalid; each bond, on the contrary, reciting that it was "issued under and in compliance with the Constitution and laws of the State of Texas." The bonds, however, showed on their face that they were issued under the Act of 1889, and plaintiff in error was bound to take notice of its purpose and provisions, and of that line of decisions holding that counties in Texas can not issue bonds unless expressly authorized by law to do so. Ball v. Presidio County, 88 Texas, 60.

Looking to the provisions of the Act of 1889, we find that it authorized the commissioners courts to levy a tax not to exceed 25 cents on the $100 to pay the annual interest, and not less than 2 per cent annually of the principal of the bonds to be issued to fund county indebtedness as therein provided, the levy to remain in force till both principal and interest of the bonds should be fully paid, but it prohibited the issu-

ance of any such bonds until such levy should first be made, and also contained the proviso, "that nothing herein shall be considered to authorize any county to levy any tax in excess of that authorized by the constitution and the laws now in force." The emergency clause of the act contains this recital: "Whereas many counties in this State are burdened with overdue indebtedness, and are not able to provide for the payment of the same, and also to pay their current expenses," etc. Such was the condition of Wilbarger County when the bonds in question were issued, and Cass County was bound to take notice of that fact, as well as of the purpose for which the bonds were issued and the requirements of the act under which they were issued. Merely because the bonds contained the general recital that they were "issued under and in compliance with the Constitution and laws of the State of Texas," did not of itself afford protection to the purchaser, since they also recited the particular act under which they were issued.

This conclusion is not, we think, in conflict with the decision of the United States Supreme Court in Gunnison County v. Rollins, 173 United States, 256, so much relied on by plaintiff in error, in which the previous decisions of that court affecting such questions were thoroughly and ably reviewed. We think, however, that that case is good authority for holding that plaintiff in error would be protected as an innocent holder if the power of the Commissioners Court of Wilbarger County to issue the bonds in question depended upon facts to be ascertained and conclusions to be reached by that court as to the probable county expense, and amount of revenue consequently required and likely to arise from taxation to meet the same during the life of the bonds. That is to say, if the Commissioners Court of Wilbarger County in issuing the bonds erroneously concluded from facts best known to that body that an annual tax of 20 cents would be sufficient to meet the current expenses of the county during the period covered by the bonds, leaving 5 cents to be applied to interest and 2 per cent annually of the principal of the bonds, Cass County would not be affected by such erroneous conclusion, but would be entitled to protection as an innocent purchaser, unless the Constitution prevented what might otherwise have been done under the Act of 1889.

We proceed, therefore, to determine the constitutional question raised, that is, whether or not it was competent for the Legislature, in passing the Act of 1889, to authorize commissioners courts of counties situated as Wilbarger County was to fund their debts by issuing bonds and levying a tax to pay the same as provided in that act. In view of the proviso quoted above, that the act was not to be considered as authorizing the levy of any tax in excess of what was authorized by the Constitution and laws then in force, the inference seems to be a natural if not an irresistible one that the Legislature contemplated that the power to make the tax levy required by that act was included within the authorized power to levy a tax for "county purposes," and especially so since the debts to be funded were already payable out of taxes derivable from

that source. Rev. Stats. 1879, arts. 961-969. Doubtless the Legisla-- ture took the view that, if registered warrants were so payable, it was. competent to raise the money to pay the bonds issued to fund them in the same way.

But in support of the opposite view, counsel for defendant in error quote from the opinions in the following cases: City of Sherman v. Langham, 92 Texas, 13; McNeal v. City of Waco, 89 Texas, 83; Bank v. City of Terrell, 78 Texas, 460, and Nalle v. City of Austin, 42 S. W. Rep., 780. These quotations are to the effect that the current expenses of city governments for each year are a first charge on its general rev-- enues for that year, and that a city council is without power to pledge its future current revenues to the payment of interest and sinking fund on its bonded indebtedness. But the cases themselves do not. seem to be altogether in point, and can hardly be quoted as authority upon the constitutional question to be determined in this case. Evi- dently the Legislature, in enacting the law of 1889 for the benefit of counties in this State which were burdened with overdue indebtedness. and not able to provide at the same time for the payment of such debts. and current expenses, must have contemplated, as already seen, that re-- lief was to come from the issuance of bonds payable out of a fund to be raised by taxation in some such manner as was attempted by Wil-- barger County. The object in view was a good one. Unless the act. was clearly unconstitutional it ought to be upheld, for to invalidate the bonds in question would be equivalent to invalidating the law itself. The debts which the bonds were issued to pay were valid debts created from year to year for current expenses of the county, and were within. the spirit as well as letter of the Constitution providing for a tax of 25 cents for "county purposes."

It has been held that legislative provisions for funding debts are to be favorably and liberally construed. Langham v. City of Sherman,. supra. Seeing that many counties were unable to make suitable pro- visions for both overdue and current expenses of municipal government in the usual way, and that by the issuance of bonds to cover the overdue debts a portion of the constitutional taxing power might reasonably be exercised for a series of years to pay off the bonds without serious in-- convenience to the counties in the discharge of their current expense obligations, the Legislature saw fit to confer upon the commissioners courts of counties so situated the power of issuing such bonds and of making a suitable levy of taxes for their payment, and we think the law should be sustained. If the levy in question had been made to pay the original warrants, which were a charge upon the current revenues,. and were paid substantially out of the proceeds of the bonds, the Con-- stitution would not have been violated; and we see no good reason why a different construction should be adopted merely because the form of the county's obligations was changed. See the reasoning of those courts. that hold the issuance of funding bonds not to be the creation of a debt within the meaning of constitutional provisions like section 7, arti--

cle 11, of our Constitution.   Insurance Co. v. Meade, 82 N. W. Rep., 78; 48 Law. Rep. Am., 785.   It was for the commissioners court, in the exercise of discretion, to determine as to the propriety and manner of the exercise of this power, which necessarily included the placing of limitations upon the power of future commissioners court, which it was competent for the Legislature to authorize, and which has in many instances been authorized.

But, if it be conceded that a tax levied to pay bonds issued, as the bonds in question were, for the purpose of funding what is termed in our law "the general indebtedness of the county" (Revised Statutes, article 852, and Revised Statutes of 1879, article 962) is not a tax levied for "county purposes" within the meaning of the Constitution, whether so intended in the Act of 1889 or not, it would yet remain to be determined whether such a tax was inhibited by the Constitution as amended in 1883, which was in force when the Act of 1889 was passed and the bonds in question were issued.   Const., art. 8, sec. 9, as published with the Revised Statutes of 1895, where the original and amended sections are both printed.   The Constitution adopted in 1876 placed a limitation as to the amount of taxes to be levied by counties upon the whole taxing power, except for the payment of debts which had been "already incurred."   But the amendment of 1883 was differently worded, and seems to have placed the restriction as to amount to be levied, not upon the whole taxing power, but only upon that power when exercised to accomplish given purposes, to wit, to raise revenue for county purposes, roads and bridges, and the erection of public buildings.   It will be noted that neither in the Constitution originally adopted, nor in the amendment, was any restriction imposed as to the amount of taxes to be levied to pay debts "already incurred."   It may be, therefore, that in amending the Constitution there was a purpose on the part of those proposing and voting for the amendment to enable counties to meet conditions of indebtedness to arise in the future, as they had arisen in the past, by leaving them free to levy such an amount of tax as might be required for that purpose.   If so, the tax in question might be upheld upon that ground, as it was made a part of the contract embodied in the issuance of the bonds, and the bonds were validated by the Act of 1899, "unless fraudulently issued or issued in violation of constitutional limitation."   Act 1899, p. 143, amending Rev. Stats., arts. 3892-3894.

These views, however, are merely suggested, and are not intended to be authoritatively announced; to which may be added the further observation that the question whether or not the funding of a debt by the issuance of bonds is the creation of a debt within the meaning of constitutional provisions requiring a tax levy to pay the interest and create an adequate sinking fund to absorb the principal, is one upon which we find courts of the highest authority outside of this State in hopeless conflict, but which does not seem to be very important in this

case; especially as the bonds would seem to be of little value apart from the tax levy in question. Insurance Co. v. Meade, supra.

One other question raised will be noticed. Counsel for defendant in error submit the counter-proposition, that the burden was on plaintiff in error to show that the tax levy of 5 cents per year on the $100 valuation was insufficient in amount to pay the interest and 2 per cent of the principal of the bonds; but conceding the full force of this, we find that the levy was in fact sufficient for the first five years, which would seem to make a prima facie case; but if not, the recitals in the face of the bonds and facts proven to bring the case within the estoppel declared by the validating act evidently did.

We conclude that the judgment should be reversed and here rendered for plaintiff in error, as prayed for in the alternative prayer of the first count of the petition.

*Reversed and rendered.*

Writ of error refused by the Supreme Court.