**WILKINSON v. FRANKLIN COUNTY et al.**

No. 5138.

Court of Civil Appeals of Texas. Texarkana.

April 9, 1936.

Rehearing Denied April 30, 1936.

Wilkinson & Wilkinson, of Mt. Vernon, for appellant.

J. A. Ward, of Mt. Pleasant, and F. B. Caudle, of Mt. Vernon, for appellees.

HALL, Justice.

Appellant brought this suit in the district court of Franklin county against said county, the county treasurer, and the commissioners' court, seeking a writ of mandamus and injunction against said county treasurer compelling him to pay certain warrants owned and held by appellant which were payable out of the county general fund. Appellant alleged, further, that the warrants were issued by proper authority of Franklin county for services rendered to the county and were properly assigned to him. The appellees answered by general demurrer and numerous special exceptions which were overruled, and alleged, further, that the warrants were not properly payable out of the general fund for the current year of 1935 in preference to the warrants drawn for the year 1935. Franklin county in 1934 and 1935 made only such levy as was necessary to meet the current expenses for each year.

The records reflect that the warrants held by appellant, concerning the payment of which a writ of mandamus is sought, were regularly issued by the commissioners' court of Franklin county during 1927 and were registered and given numbers by the county treasurer. Payment of these warrants out of the general fund on hand for the year 1935 was refused by the county treasurer for the reason that in July, 1934, the commissioners' court of Franklin county made and entered its order that warrants issued for the current year against the general county fund should first be paid and that all warrants issued for previous years should be paid out of funds collected as delinquent taxes belonging to the year corresponding to the date of the warrant. That is, a warrant

issued in 1927 should be paid out of delinquent taxes collected for the year 1927. There was sufficient money on hand in the general county fund of the year 1935 from collections for that year to pay the warrants held by appellant if they were paid ahead of warrants for the current year. There seems to be no dispute that the warrants held by appellant bore preferential registration numbers to those for the current year 1935, and if payment were made in the order of registration, appellant's warrants would be paid ahead of those for the current year of 1935.

 After a hearing, the trial court ordered certain warrants held by appellant paid out of funds in the treasury to the credit of the county general fund for the year 1927; adjudged two of the warrants void; and as to the remaining ones he refused any relief, holding, as shown by conclusion of law No. 6, "the County Treasurer cannot pay out of the general county fund any money collected from tax levy for any given year, until all the warrants registered against the fund for the same year have been paid." Thus, the only question raised upon the appeal is whether the trial court was correct in the conclusion of law set out above. In other words, is the appellant entitled to have his valid warrants which are prior in order of registration to the warrants for the year 1935 paid ahead of the warrants issued for the current year 1935? The warrants in controversy herein were issued for the ordinary expense of the county during the year 1927, and they would not constitute a debt within the meaning of section 7, article 11, of the Constitution of Texas. Brazeale v. Strength (Tex.Civ.App.) 196 S.W. 247. Therefore the correct disposition of this case, in our opinion, raises no constitutional question.

The articles of the Revised Statutes applicable here are:

"Art. 1625. Each county treasurer shall keep a well-bound book in which he shall register all claims against his county in the order of presentation, and if more than one is presented at the same time he shall register them in the order of their date. He shall pay no such claim or any part thereof, nor shall the same, or any part thereof, be received by any officer in payment of any indebtedness to the county, until it has been duly registered in accordance with the provisions of this title. All claims in each class shall be paid in the order in which they are registered.

"Art. 1626. Claims against a county shall be registered in three classes, as follows:

"1. All jury script and script issued for feeding jurors.

"2. All script issued under the provisions of the road law or for work done on roads and bridges.

"3. All the general indebtedness of the county, including feeding and guarding prisoners, and paupers' claims.

"Art. 1627. Said treasurer shall enter each claim in the register, stating the class to which it belongs, the name of the payee, the amount, the date of the claim, the date of registration, the number of such claim, by what authority issued, and for what service the same was issued, and shall write on the face of the claim its registration number, the word 'registered,' the date of such registration, and shall sign his name officially thereto."

We think the order of payment of the warrants in question is governed by the plain provisions of article 1625, R.S.

In the case of Clarke & Courts v. San Jacinto County, 18 Tex.Civ.App. 204, 45 S.W. 315, 316 (opinion by Judge Williams later of the Supreme Court), the action was brought against the county for payment of certain claims for stationery bought by the county from appellant for which warrants had been issued in 1890, 1891, and 1892. Said warrants were duly registered and numbered, but on account of the division of the county third-class fund into six classes, enough money was not received into the class against which appellant's warrants were drawn to pay them. It was shown that warrants junior to appellant's had been paid out of the county third-class fund. In passing upon the right of appellant to have its warrants paid from the proper fund and in the order of their registration, the court said:

"The allowance of the claims and issuance of the warrants was an auditing of them, and under the statute (Rev.St.1895, art. 790) the county was protected from suit until such facts as those supposed arose. But plaintiffs were entitled not only to have their claims audited and allowed, but to have them paid, whenever, by following the provisions of law intended to provide means for their payment, funds were, or should have been, receiv-

ed sufficient for that purpose. It is provided by Rev.St.1895, art. 852, that claims against the county shall be registered in three classes, specifying the kind that are to belong to each class. The claims of appellants belong to the third class, or general indebtedness. By articles 853-855, registration of claims, according to class in the order of their presentation, is provided for, and article 856 provides: 'The treasurer shall pay off the claims in each class in the order in which they are registered.' Article 857 provides that all of the funds received by the treasurer 'shall be classed as follows,' and then gives three classes, corresponding with the three classes of claims before indicated, and requires that the funds of each class shall be appropriated to the payment of claims of the corresponding class. Articles 858, 859, are as follows: '(858) The commissioners' court shall have power to cause such other accounts to be kept, creating other classes of funds, as it may deem proper, and require the script to be issued against the same and registered accordingly.' '(859) The commissioners' court shall have power by an order to that effect to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, except that the funds that belong to class first shall never be diverted from the payment of the claims to which the same are appropriated by article 857, unless there is an excess of such funds.' We presume that the action of the commissioners' court in dividing up the third class of funds was supposed to be authorized by article 858. The language of article 857, requiring the three named classes of funds to be kept, is mandatory; and the provision of article 858 authorizes the creation of 'other' classes. The two provisions do not conflict, and the latter does not necessarily modify or control the other; for provisions may be found in the laws of this state for the raising of funds for special purposes, which would not be embraced in the classification required by the statute, but the keeping of which could be regulated by the court under article 858. But, as we have before pointed out, the petition does not set up the facts developed by the evidence, and present the question in such a way as to require that we go so far as to hold that the division of the general fund was unauthorized. No remedial process is authorized under the pleadings to correct it, and hence we need go no further

than to determine whether or not plaintiffs' rights against the county have been so denied as to entitle them to sue and recover judgment: If it be conceded that article 858 so far modifies article 857 as to authorize the creation of other classes of funds out of those required by the latter, it cannot be allowed that the authority to do so can be so used as to destroy the right of holders of registered claims, under article 856, to have their claims paid out of the appropriate fund in the order of registration. This is an imperative requirement, which imposes a duty upon the county, and confers a right upon its creditors, and there is nothing in the other provisions to qualify either. Now, the evidence shows that by the device adopted this right has been denied to plaintiffs, and claims junior in date to theirs have been and are being paid out of the funds which the statute plainly says 'shall be appropriated to the payment of all claims registered in third class.' Article 857. This being true, it necessarily follows that plaintiffs' claims were not paid when they should have been paid, and since, by the action taken, they are required to look alone to a fund which is insufficient, instead of the whole of the fund designated by the statute, there is a virtual refusal to pay."

In the case of White v. Calaway (Tex. Civ.App.) 282 S.W. 642, writ refused, appellant White brought suit against certain officers of Montague county seeking a writ of mandamus compelling them to " 'immediately pay' to applicant a certain judgment in his favor against Montague county, in the sum of $500, with interest and cost." The lower court refused applicant the relief sought and he appealed. Judge Connor of the Fort Worth Court of Civil Appeals in passing upon said case, after quoting from other authorities, said:

"The statement there made [Kaufman County v. Gaston (Tex.Civ.App.) 273 S. W. 273] is supported by authorities, and we think there can be no doubt under the circumstances of this case but that the appellant was entitled to have the commissioners' court direct the clerk to issue a warrant for the payment of his claim. That claim consisted of the judgment, its interest, and costs adjudged in his favor. Upon this issuance of the warrant and its presentation to the treasurer, the appellant was entitled to have the warrant registered and have the same paid in the order in which it was registered, as provided by

article 1625 above. See Clarke & Courts v. San Jacinto County, 45 S.W. 315, 18 Tex.Civ.App. 204. The right to secure such payment is not affected, we think, by the fact pleaded in defense and upon evidence in behalf of appellee county that there was not sufficient money in the general fund of the county to pay the debt and to meet other necessary running expenses of the county." Underwood v. Howard (Tex.Civ.App.) 1 S.W.(2d) 730.

The case of Laforge v. Magee, 6 Cal. 285, by the Supreme Court of California, we think is in point. Quoting from said opinion:

"This was a petition for a peremptory mandamus, directed to the defendant as county treasurer, to compel the payment of certain warrants on the county treasury, held by plaintiff. The petition avers that plaintiff's warrants are prior in registry to any other outstanding warrants, or other unfunded indebtedness of the county.

"The answer admits the material allegations of the petition, but sets up in defence an order of the board of supervisors of the county, setting aside two-thirds of the revenue for payment of current expenses of the county, in compliance with which order, defendant refused to appropriate the money thus set apart, to the payment of plaintiff's warrants. * * *

"The only important question involved in this case, is the power of the board of supervisors to set apart a portion of the revenue of the county, as a fund for current expenses.

"In the absence of a statute on this subject, there is no doubt that the supervisors as the fiscal agents of the county, might direct the disposition of its revenues. But the Act creating the office of county treasurer, provides that warrants drawn on the treasury shall be paid in the order of their registry; this amounts to an appropriation, and a general law cannot be suspended or repealed by the supervisors, particularly when no authority is conferred on them to perform the particular act."

To the same effect are State ex rel. Trust Co. v. Melton, 62 W.Va. 253, 57 S.E. 729; State ex rel. Rush v. St. John, 30 Wash. 630, 71 P. 192.

Article 1625, R.S., clearly denotes the order in which warrants drawn against the county treasury are to be paid, and amounts to an appropriation of the funds in the county treasury to the payment of all warrants legally drawn against the several classes of funds in the order of their registration. And the order of the commissioners' court of Franklin county, of July 13, 1934, requiring the county treasury first to pay current warrants drawn against the county general fund ahead of senior registration warrants drawn against said fund is violative of article 1625, R.S., and is therefore void.

It is our opinion that the trial court erred in its judgment refusing the writ of mandamus in respect to the warrants in controversy.

Therefore, the judgment of the trial court is reversed and remanded with binding instructions to issue the mandamus as prayed for with respect to the warrants held valid.