RAINS, County Treasurer, et al. v. MERCANTILE NAT. BANK AT DALLAS.

No. 4399.

Court of Civil Appeals of Texas. El Paso.

Feb. 8, 1945.

Rehearing Denied March 1, 1945.

See also, Sup., 182 S.W.2d 993.

John J. Watts, of Crane, for appellants.

John D. McCall, Clarence E. Crowe, and Millard Parkhurst, all of Dallas, and Collins, Jackson, Snodgrass & Blanks, of San Angelo, for appellee.

PRICE, Chief Justice.

This is an appeal by Upton County and Mrs. J. E. Rains, the County Treasurer thereof, from a judgment of the District Court of Upton County, rendered on the verdict of a jury in an action wherein Mercantile National Bank at Dallas was plaintiff and said appellants and the First State Bank of Rankin were defendants. The First State Bank was a defendant in a cross action of the Mercantile National Bank.

Hereinafter the plaintiff will be designated as "Bank," the defendant Upton County as "County," and Mrs. J. E. Rains as County Treasurer, as "Mrs. Rains."

The Bank declared on scrip warrants aggregating $32,352.96 drawn by the County on its General Fund by its duly authorized officers; scrip warrants of the County aggregating $10,212.74, so drawn on its Officers' Salary Fund; and scrip warrants aggregating $21,835.94, so drawn by the County against its Road and Bridge Fund. The total of these three classes of warrants was $64,401.64. The warrants were something over eleven hundred in number, payable to various parties, and the Bank acquired all of them by purchase; all were dated and issued between January 1, 1942 and November 1, 1942, all purporting to bear interest at the rate of four per cent per annum from date until paid.

The Bank sought an injunction against Mrs. Rains in her official capacity restraining her from paying unregistered warrants on the funds on which such warrants were drawn, and from paying any warrants on said funds registered subsequent to the date of the registration of the warrants in suit, until the warrants in suit had been paid. In substance, commanding her, as funds applicable to the warrants of the Bank came into the depository, that such warrants be paid in the order of their registration.

Relief was sought against the First State Bank of Rankin only in the event the warrants sued on were held invalid.

The County and Mrs. Rains assailed all warrants as a whole on the ground that in connection with a contract between the County and Rauscher-Pierce Company of Dallas, whereby said Company had agreed to purchase scrip warrants issued during the year 1942 and to be issued during that year in a total sum of $90,000, the same were void. In substance, it was charged that the warrants represented debts of the County for which no tax was levied to pay same, in violation of Section 7, Article XI, of the Constitution, Vernon's Ann.St. Certain of the warrants were attacked as void on the ground that the same were issued to Officers of the County in violation of Section 7, of Article 3912e, Vernon's Ann. Statutes, such Article, in substance, forbidding the issuance of a warrant to a county officer indebted at the time to the county. Some were attacked on the ground that they were issued for an illegal purpose.

The issues submitted to the jury, with the findings thereon, were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the plaintiff, Mercantile National Bank at Dallas, is the owner and holder of the warrants herein sued on? Answer 'yes' or 'no.'"

Answer: "Yes."

"Special Issue No. 2: Do you find from a preponderance of the evidence that the reasonably expected current revenue of Upton County for the year 1942 was not a sum amounting to as much as the sum of claims representing the ordinary expenses of the County for that year. You will answer 'It was not' or 'It was.'"

Answer: "It was."

"Special Issue No. 3: Do you find from a preponderance of the evidence that in purchasing the warrants herein sued upon, the plaintiff, Mercantile National Bank at Dallas, relied upon the contract between Rauscher-Pierce & Company and Upton County, executed April 13, 1942? Answer 'Yes' or 'No.'"

Answer: "Yes."

"Special Issue No. 4: Do you find from a preponderance of the evidence that the defendant herein, Upton County, acting by and through it's Commissioners' Court and County Officers, is now estopped from denying liability on the warrants herein sued upon? Answer 'The County is estopped' or 'The County is not estopped.'"

Answer: "The County is estopped."

"Special Issue No. 5: Do you find from a preponderance of the evidence that the plaintiff, Mercantile National Bank at Dallas, and Upton County, acting through its officials, reasonably expected that the warrants herein sued upon were to be paid out of the County's current revenues for 1942? Answer 'Yes' or 'No.'"

Answer: "Yes."

"Special Issue No. 6: Do you find from a preponderance of the evidence that the plaintiff herein, Mercantile National Bank at Dallas, in purchasing the warrants herein sued upon, at the time of their purchase relied upon the acts and conduct of Upton County, acting through its Commissioners' Court and officials as to the validity of such warrants? Answer 'Yes' or 'No.'"

Answer: "Yes."

Judgment was rendered in favor of the Bank establishing a liability on the warrants in the sum of $64,401.64, together with four per cent interest on each warrant

from its date to the date of the judgment; from the date of the judgment the amount thereof was to bear interest at the rate of six per cent per annum. As to Mrs. Rains in her official capacity, an injunction was granted substantially in terms sought by the Bank.

Appellants rely on thirteen points for a reversal. The first seven are briefed as a group, and may be here so considered. The seven points, for practically the same reason, urge that each and all of the warrants, the basis of the judgment, were void,—void because issued in violation of Section 7, of Article XI, of the Constitution. The applicable portion of said section of the Constitution is as follows:

"But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levy and collecting of sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund."

The scrip warrants we here deal with are ordinary scrip warrants, save that same provide for four per cent interest from date. Their payment is deferred to no particular date. They amount to a certificate that the payee had an allowed and approved claim against the County in the amount of each warrant.

A scrip warrant drawn by a county for current expenses does not come within the prohibition of Section 7, of Article XI, of the Constitution, if there is reasonable expectation that same be paid out of the county's current revenues for the year. Stevenson v. Blake, 131 Tex. 103, 113 S.W. 2d 525.

This is true, even though at the time such warrant is drawn on the particular fund, there is not sufficient cash in such fund available to pay same. Wilkinson v. Franklin County, Tex.Civ.App., 94 S.W.2d 1190, writ refused.

Each and all of these warrants were drawn during 1942 for the current expenses of the County for that year. The jury found that the Bank and the County reasonably expected that these warrants were to be paid out of the County's current revenue for 1942. The Bank was an assignee of each one of the 1100 odd warrants sued upon. Its intention could hardly be material. This record reflects no contract with the Bank for the issuance of these warrants. No objections on the part of the County appear in the record in this respect as to the form of any of the issues submitting this matter.

Special Issue No. 2 and Special Issue No. 5 each presents in a manner this issue. No exception was taken to No. 5. Appellants did except to No. 2, as follows: "for the reason that said issue overlooks the element of lawful contemplation, and overlooks the element of outstanding indebtedness against said fund which had been recorded and was entitled to preference payment under the statutes of Texas, and overlooks the element and the test that it is the intention of the parties to this suit and the parties to said contract, which must control."

The exception is not very clear. The issue was not erroneous in the matters complained of in the above quoted exception. The intention of the Bank, a party to the suit, could not be material. It was an assignee of the warrants. By "said contract," the exception must refer to the intention of the parties to the Rauscher-Pierce contract and the parties to this suit. Any intention of Rauscher-Pierce, the Bank, or the Rankin Bank, was immaterial. The plaintiff Bank, claiming as assignee of each of the warrants, took same subject only to the defense available to its assignors. The same vice inheres in the two requested charges which were refused. Each of these two charges, in our opinion, incorrectly places the burden of proof.

In any event, the evidence was insufficient, in our opinion, to raise the issue as to the creation of a debt within the prohibition of the constitutional provision. Until warrants have been issued beyond the reasonably expected revenue, the prohibition does not apply. Each warrant when allowed and registered was a pro tanto appropriation of the fund against which it was drawn as of the date it was registered. Brazeale v. Strength, Tex.Civ.App., 196 S.W. 247.

The amount of the tax levy appears from the county records, existing claims appear from the registry of claims. There is no showing that at the time of the issuance of any of these warrants the aggregate of the registered unpaid warrants exceeded the reasonably expected revenue.

In Colonial Trust Co. v. Hill County, Tex.Com.App., 294 S.W. 516, 518, it is said:

"It was not the purpose of those who framed the Constitution and the people who

adopted it to furnish a means by which those dealing with the counties of this state could be defrauded."

The language of that opinion has peculiar application here.

The County takes the position here that under the undisputed evidence, all the obligations sued upon constituted debts which it was contemplated should be paid out of future revenues of the County.

There was introduced in evidence a purported contract covered by resolution and order of the County Commissioners between the County and the firm of Rauscher-Pierce Company. Whether this contract was ever signed by said Company or acted upon by said Company does not appear from the statement under the points in the County's brief, nor, as far as we have been able to find, in any portion of the statement of facts referred to in such statements. The Bank in no way relies on such contract. Paragraph 1 of this contract is as follows:

"The purchaser (that is, the Company) will purchase from the holders, to the extent that such warrants shall be offered to it, all general fund scrip warrants heretofore issued during the year 1942, and now outstanding and all additional scrip warrants hereafter to be issued against said fund as such warrants are issued, in an amount not to exceed $45,000.00 including such warrants heretofore issued and now outstanding, and will purchase all Road and Bridge Fund `Scrip Warrants heretofore issued during the year 1942, and now outstanding and all additional scrip warrants to be issued against the Road and Bridge Fund, as such warrants are issued, in an amount not exceeding $45,000.00, including such warrants heretofore issued and now outstanding."

The contract further provided all of the scrip warrants should bear interest from their date at the rate of four per cent per annum. The obligation of the Company was subject to conditions, among these was the approval of the legality of the warrants by John D. McCall, of Dallas, Texas, and that the warrants be issued for objects and amounts as provided in the amended budget for 1942. After the purchase of $25,000 of the scrip warrants of the General Fund, the County was to take such steps as required by law to have such warrants funded into bonds in accordance with the Bond and Warrant Law of 1931, Vernon's Ann.Civ. St. art. 2368a, said funded bonds to bear

four per cent interest, payable semi-annually, and mature serially not to exceed six years from the date of issuance. Unless such steps to so fund the warrants were taken, the Company was not to be liable to purchase, if offered, any more of such warrants. A like provision was in the contract as to the purchase of $25,000 of Road and Bridge Fund scrip warrants. Under certain conditions, after the purchase of $50,000 in scrip warrants the Company was not to be obligated to purchase further warrants, even though same be offered.

■ The County Budget for 1942 had been made and certified to in August, 1941. Total assessed valuation of the property for the year 1941 was something in excess of twenty-two million dollars; for 1940 it was slightly in excess of eleven million dollars. In estimating the income from receipts from taxes for 1942 the assessed value for 1941 was used. There was some dissatisfaction with the 1941 assessment, and one or more taxpayers contested same. What disposition was made of this litigation does not appear. Assessed valuation as finally made for 1942 was slightly in excess of fourteen million dollars. The budget for 1942 was twice amended. Here the first amendment is not called in question. Just before the contract hereinbefore discussed was made, the second amendment was made. This amendment, the County and Mrs. Rains assail as illegal. It curtailed and lessened the expenditures from several funds. It was adopted at the suggestion of Mr. Millard Parkhurst, then acting as attorney for the said Rauscher-Pierce Company. The Budget Law was passed by the 42nd Legislature. See Acts 1931, 42nd Legislature, p. 339. Insofar as same relates to counties, it is embodied in Articles 689a–9 to 689a–11, Vernon's Ann. Statutes. Article 689a–20 relates to the budget of the State and to all subdivisions thereof. Article 689a–11, in substance, that after the county has duly adopted a budget, that no expenditures shall be made except in strict compliance therewith. There is this exception contained therein:

" * * *, except that emergency expenditures, in case of great public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the Court as amendments to the original budget."

The quoted portion of Art. 689a—11 and Art. 689a—20 seems to be the only provisions relating to amendment of the budget. Art. 689a—11 is very specific as to when the county budget may be amended and the steps to be taken to make the amendment. It is thought that the restriction as to amendment applies only when new or additional expenditures not provided for in the original budget are sought to be added by amendment. Under Art. 689a—20, subject to limitation of Art. 689a—11, a county budget may be amended at any time. The limitation of expenditures provided for by the second amendment to the County budget was not such as comes within the limitation provided in Art. 689a—11.

The budget for 1942, as amended, may be summarized as follows:

| Fund | Anticipated Revenues | Anticipated Disbursements |
|---|---|---|
| General Fund | $59,250.00 | $57,554.96 |
| Officers' Salary Fund | 24,529.58 | 23,660.00 |
| Road and Bridge Fund | 56,000.00 | 54,149.48 |

As adopted before amendment, expenditures exceeded estimated receipts by about $12,000.

Included in the $57,554.96 anticipated expenditures, was $14,411.45 unpaid scrip warrants for 1941, payable out of the General Fund; also in anticipated expenditures of $54,149.48, was $16,559.49 unpaid scrip warrant for 1941, payable out of the Road and Bridge Fund. The amount of unpaid delinquent taxes at relevant times herein is not shown. In the budget, $12,000 is shown as anticipated collections from that source.

■ Turning again to the purported contract between Rauscher-Pierce Company and the County, dated April 13, 1942, this may be observed: In the record, as reflected by the briefs, there is no showing that the Bank acquired the warrants in question here from the holders of same in pursuance thereof. From whom the Bank acquired these scrip warrants, it is not shown. This contract did not create a debt. No debt was created in pursuance thereof.

■ It is elementary that the Commissioners' Court could not legally bind the County to fund scrip warrants to be issued with bonds. Reference to the contract will disclose that after a certain amount had been acquired, if such amount was not refunded by bonds, the purchaser should be relieved from its obligation to the County to purchase any more of the warrants from the holders thereof, if same were tendered to it.

It is our opinion that these warrants were not issued in violation of Section 7, of Article XI, of the Constitution. Wilkinson v. Franklin County, Tex.Civ.App., 94 S.W.2d 1190, writ referred; Shock v. Colo-S.W.2d 1190, writ refused; Shock v. Colo-61; White v. Calaway, Tex.Civ.App., 282 S.W. 642, writ refused.

■ The evidence shows that collections have been sufficient to pay these warrants. Upton County now has funds on hand sufficient for their payment. The funds are legally applicable to their payment.

■ The County seeks cancellation of certain warrants totaling the sum of $1072.-49. The theory for cancellation is that same were drawn for an illegal purpose. Most of the aggregate are warrants drawn in favor of the Manager of the McCamey Airport. Expenditures along this general line are authorized by Article 1269h, Vernon's Annotated Statutes; Defense Guard by Article 5891a; Sheep Show, Article 2372d. Adams v. McGill, Tex.Civ.App., 146 S.W.2d 332.

The court did not submit any issue as to these warrants in this respect; defendant requested the submission of no issue. Just what was the consideration for these warrants does not appear from the statements in either of the briefs.

Upton County had the burden of showing that these warrants were illegal, and also the warrants amounting to about $90.00 to the Lion's Club. Same appear to have been properly certified by its officers. San Patricio County v. McClane, 44 Tex. 392; Leach v. Wilson County, 62 Tex. 331; National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.2d 1027; Nacogdoches County v. Lafferty, Tex.Com.App., 61 S.W.2d 994; City of San Antonio v. Cullen, Tex.Civ.App., 168 S.W.2d 882, and authorities there cited.

■ Cancellation is sought of certain warrants drawn on the Officers' Salary Fund totaling $10,510.24. The ground urged for cancellation is that said officers were indebted to the County at the time same were issued to them. These warrants

are said in the County's brief to be described in Defendant's Exhibit 6, attached to the pleading of Upton County. There are three exhibits attached to Upton County's answer, but none are labeled A. B. or C. However, it is thought these are the warrants attacked by the County's Point 13. Section 7, of Article 3912e, Vernon's Ann.Civ.St., is relied upon. There is no issue submitted to the jury relating to any of these warrants in this respect. Defendant requested no issue. Here, as in the case of the warrants charged to have been issued on an illegal consideration, the burden was upon the County to show that such officers were indebted to the County on the date of the issuance of the warrants, to establish the indebtedness as a matter of law, that is, beyond issue. There is evidence that the County filed suit against several of these officers to whom the warrants in question were issued. These suits terminated unfavorably to the County. Pleas in abatement were sustained to the suits. These pleas were sustained on the ground that the officers sued had either settled or paid the claims. The judgment seemed to indicate that these payments or settlements were made subsequent to the time such salary warrants were issued to the officers involved in these suits instituted by the County against them. Under these facts there was a basis, we think, for the issue of estoppel found in favor of the Bank against the County. The County, no doubt, has, or at least had, a remedy against the officers and their sureties. Section 7, of Article 3912e, Vernon's Ann.Statutes, cannot mean that an officer forfeits all right as against the County for compensation for the reason that he is indebted to the County. The real purpose of forbidding the issuance of a warrant for his legal compensation is to insure his indebtedness to the County will be paid. His obligations paid or discharged, they should be no further bar to the fulfillment of the County's obligation. The evidence strongly indicates, if such officers at the time of the issuance of the warrants were indebted to the County, such indebtedness has been discharged. If such be the case, no logical or just reason can be found as to why the County should not fulfill its just obligation to the assignee of these officers. The evidence is not conclusive that on such dates they were so indebted.

Under the facts as established by the evidence and the verdict of the jury, it is our opinion that the County is estopped to now question the validity of these warrants.

Point No. 12 assails the judgment awarding the Bank four per cent interest on each warrant on the General Fund from its date as illegal, because no interest may be paid by the County on warrants issued against the General Fund. In support of this position the County cites an opinion of the Attorney General, 0—1149, Annual Report of the Attorney General, 1939, Vol. 1, p. 308. As a matter of fact, there is an earlier opinion of the Attorney General, which is in general agreement with the proposition laid down in the opinion cited, 0—505, Annual Report of the Attorney General, 1939, Vol. 1, p. 126. Each of these opinions is in the nature of memorandum, and there is not available to us the exact state of facts submitted to the Attorney General. Under the point urged by the appellants the question as to interest on the other warrants is not presented.

0—505 is as follows:

"A county commissioners' court cannot allow or pay interest on ordinary county warrants or scrip issued for the payment of current expenses, and the commissioners' court cannot contract with a party to cash county scrip and agree to pay the interest thereon."

0—1149:

"When a county is operating on a cash basis, such county cannot legally pay interest on overdrafts. The commissioners' court is without authority to allow and pay interest on ordinary county warrants or scrip in payment of current expenses. Sec. 53 of Art. III, Constitution of Texas; 15 Cor.Jur. 606; 15 Ruling Case Law 17; 11 Tex.Jur. 603; 11 Tex.Jur. 564; Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.2d 535; see State of Texas v. Wilson, 71 Tex. 291, 9 S.W. 155.

The first memorandum opinion is categorical in nature and forecloses the question without discussion. The second is of the same nature, but cites precedents to sustain the proposition laid down. We regret that we have not the exact facts presented to the Attorney General at the time of making these rulings. It may or may not have been the situation upon which the Supreme Court passed in the case of Ashe v. Harris County, 55 Tex. 49. It was there held that where scrip warrants do not provide interest, interest cannot be collected thereon. The opinion disclaims any inten-

tion to intimate any holding as to the power of the commissioners' court to issue interest-bearing warrants for current expenses. It is impossible to deduce the situation presented to the Attorney General from the opinion wherein it relates to payment of interest on overdrafts. If a county be operating on a strictly cash basis, it is hard to conceive of a situation where there would be any occasion to consider interest on overdrafts. Cash basis, in this connection, would mean that when warrants are drawn for current expenses on a fund, that money is in the depository applicable thereto sufficient to pay same. It is possible that the reference is to a situation where warrants are drawn without provision for interest and are paid by the depository when there are insufficient funds on hand to meet same. In this case, of course, the depository, in making payment, would act in its unofficial capacity as a private banking institution. If a county should voluntarily pay interest on warrants for current expenses, the warrants not providing for interest, there being no legal obligation to pay interest, there could be small question but what such payment would fall under the interdiction of Sec. 53 of Art. III, Constitution, cited in the Attorney General's Opinion. This follows as a logical deduction from the holding in the case of Ashe v. Harris County, supra.

In the case of San Patricio County v. McClane, 58 Tex. 243, interest was allowed on warrants for a proper consideration, the warrants providing therefor. These warrants were for the construction of a courthouse and jail. 44 Tex. 392. The fair inference is, we think, that they were issued in pursuance of a contract that they should bear interest.

It is not shown by the opinions whether or not payment was deferred for a definite time. At the same term that San Patricio County v. McClane was disposed of, the opinion in the case of Davis v. Burney, 58 Tex. 364, was handed down. In this latter case there was involved scrip issued prior to April 18, 1876, and an order of the Commissioners' Court of Galveston County providing for the registration of such scrip, and that from the date of registration same should bear interest at the rate of eight per cent per annum, but that such scrip should not be received for taxes. On February 1, 1880, the Commissioners' Court levied a tax for the payment of registered warrants. It was held the provision for the payment of eight per cent interest on the registered scrip was not void.

The cases of Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.2d 535, and State v. Wilson, 71 Tex. 291, 9 S.W. 155, cited in the Attorney General's memorandum opinion, are regarded as having little application to the concrete situation we have here presented. In the first case mentioned it is held that a provision for interest in a warrant issued solely against delinquent tax collections was invalid. There no obligation of payment arose until the taxes were collected. State v. Wilson, supra, held there was no legal obligation on the part of the State to reimburse a contractor who was compelled to suffer a great discount on warrants delivered to him in pursuance of a contract with the State.

On November 8, 1917, the Honorable W. J. Townsend, Assistant Attorney General, rendered an opinion holding in substance as follows:

"1. In issuing county scrip or warrants in the usual manner and for the current expenses of the county, the commissioners court is not authorized to provide for payment of interest thereon.

"2. Ordinary county warrants or scrip are simply directions to the treasurer to pay the amount of money called for, and are to be read as if they expressed upon their face that they are only to be paid in their order and on compliance with the laws.

"3. Such warrants of scrip are not contracts to pay on demand or at a fixed date. They are simply evidence of an indebtedness allowed, but are not contracts in writing, bearing interest.

"4. The payment of interest on the ordinary county warrants or scrip by the commissioners court is the appropriation of money upon a claim not provided for by a pre-existing law, and is prohibited by Section 44, Article 3, State Constitution." Report and Opinions of Attorney General 1916–1918, p. 840.

This opinion was carefully prepared, and we believe that it is correct. It is thought that this opinion reflects the views of the Attorney General's Department from the date of its rendition to the present time.

There can be no question that various counties of the State have adopted various means to make such warrants equivalent to cash on the date of their registration. Sometimes interest is paid to a bank pur-

chasing warrants where the depositor has not the funds on hand to pay same. The intent and spirit of the law is that current expenses be currently paid.

Appellants' point of error only assails the interest allowed on the General Fund warrants. Hence what we have said and' hereafter say herein applies only to such warrants.

Here are presented these concrete facts:

(1) These warrants provide for the payment of four per cent interest from their date;

(2) The County budget sets up as expected expenditures this interest;

(3) The situation as to the condition of the funds upon which the warrants were drawn indicated that same could not be paid immediately upon issuance.

We have carefully read and considered the cases of San Patricio County v. McClane, 58 Tex. 243; Davis v. Burney, 58 Tex. 364; Cass County v. Wilbarger County, 25 Tex.Civ.App. 52, 60 S.W. 988, writ denied; Lasater v. Lopez, 110 Tex. 179, 217 S.W. 373; Bexar County v. Mann 138 Tex. 99, 157 S.W.2d 134; and Tyler v. Shelby County, 5 Cir., 47 F.2d 103. In our opinion all are distinguishable from the situation here presented, in that the interest was either allowed as part of the contract creating the indebtedness or in refunding a previously valid indebtedness. Here, we have interest-bearing warrants, some in payment of official salaries which are obligations created by the general law, and not by contract of the Commissioners' Court; as to the other warrants, there is no evidence that at the time of the contracts justifying their issuance that a term of such contracts was that the warrants should bear interest at the rate of four per cent per annum. The Bank does not here in any way rely upon the Rauscher-Pierce contract with the County. It is unnecessary to discuss the validity of such contract. The Bank here stands in the shoes of the payees of the respective warrants.

It is apparent from the record that the County adopted the general policy of making all of its current expense warrants bear four per cent interest without regard to any contract with the payee thereof. This conclusion we think follows from the provisions of the Rauscher-Pierce contract by the fact that each of the 1100 warrants here involved is recited to bear four per

cent interest. Further, when we consider the numbers of the warrants with relation to each other, support for the conclusion is found. All were issued between January 1, 1942 and November 1, 1942. Their total, perhaps, represents almost the total issued for current expenses between those two dates. This being the case, we believe the provision for four per cent interest therein is invalid as in conflict with Sec. 53 of Art. III of the Constitution; further invalid, because beyond the power of the Commissioners' Court to insert such provision without consideration.

It is probable that a county, even in case of a warrant drawn for current expenses, might, in pursuance of the contract creating the obligation, lawfully provide for interest therein. There must be a valid consideration for the payment of the interest. A provision in a contract with a prospective purchaser of warrants issued and to be issued, that all warrants should bear interest is, we think, invalid—invalid whether sanctioned by contract or by practice. No doubt it is very desirable that warrants issued for current expenses should be currently paid. Many counties and cities have resorted to various means to bring this end about. Here, we only consider and decide as to the specific case before us.

As to the interest provision in these General Fund warrants, there is another serious, and we think fatal, defect. These warrants bear interest from date. Such a provision would enable the holder at his will, by failing to register, to convert same into an interest-bearing obligation of indefinite duration. Art. 1625 et seq., R. C.S., provide for the registration and payment of claims against the County. These warrants the County could not pay unless registered as provided in the cited articles of the statute. These warrants have, no doubt, all been registered. If it were lawful for such warrants to bear interest from date, a county might fix such an attractive rate that scrip warrants would be worth more than par. Warrants are not payable in accordance with their date, but in the order of their registration.

That portion of the judgment awarding interest at the rate of four per cent per annum to the date of the judgment on its General Fund warrants aggregating $32,-352.96 is reversed and the judgment is reformed by eliminating that provision therefrom, and as reformed, the judgment of the trial court is affirmed.

Judgment will not be entered against the sureties on the supersedeas bond. The County was not required to give a bond in order to appeal. Art. 2276, R.C.S.

As to Mrs. Rains, there was no monetary judgment rendered against her, and she could only supersede the judgment by having the court fix the bond necessary to supersede the judgment. Rule 364, R.C.P.

Unless a bond be required by law it is not a statutory bond authorizing the appellate court to render judgment thereon against the surety. Buttlar v. Davis, 52 Tex. 74.