BEXAR COUNTY, TEXAS, ET AL V. GERALD C. MANN, ATTORNEY GENERAL.

No. 7914. Decided December 17, 1941.
(157 S. W., 2d Series, 134.)

John R. Shook, Criminal District Attorney, Jay Sam Levy, Assistant Criminal District Attorney, both of San Antonio, and W. P. Dumas, of Dallas, for relator.

Gerlad C. Mann, Attorney General of Texas, Geo. W. Barcus, Claud O. Boothman, Ocie Speer and Clarence E. Crowe, Assistants Attorney General, for respondent.

Robert Ogden, of Dallas, for intervenor, Automatic Voting Machine Corporation.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a mandamus proceeding instituted in this Court by Bexas County, Texas, and its commissioners' court against Hon. Gerald C. Mann, Attorney General of Texas, to compel him to approve an issue of bonds proposed to be issued and sold by the county, the proceeds thereof to be used to pay for certain voting machines already contracted for.

We will not burden this opinion with any extended statement regarding this bond record. It is sufficient to say that this bond order authorizes the issuance of bonds of Bexar County, Texas, to be known as "Bexar County, Texas, General Fund Bonds, Series 1941," in the principal sum of $197,000.00, payable serially during fourteen years, and bearing interest at the rate of 2 1/2 per cent. per annum, payable semi-annually. Such bond order levies a tax of 1 1/4¢ on the $100.00 valuations to pay such bonds, with interest, as they mature for each and all of the years during which they are payable, and such tax is charged against the Twenty-five Cents General Fund Tax authorized by Section 9 of Article VIII of our State Con-

stitution. We here quote that part of this bond order levying a tax to pay these bonds.

"IT IS FURTHER ORDERED BY THE COURT that to pay the interest on said bonds and create a sinking fund sufficient to redeem them at maturity, a tax of One and one-quarter CENTS (1 1/4¢) on each one hundred dollars' valuation of taxable property in said County of Bexar, Texas, out of the 25¢ General Fund Tax authorized by Section 9, Article 8, of the Constitution of Texas, or such an amount as may at all times be legally necessary, shall be annually levied on said property, and annually assessed and collected, or so much thereof as shall be necessary, or in addition thereto as may be required, until said bonds with interest thereon have been fully paid; and the said tax of One and one-quarter CENTS (1 1/4¢) is now hereby levied for the current year, and said tax, or so much thereof as shall be necessary, or in addition thereto as may be required, is hereby levied for each succeeding year while said bonds, or any of them, are outstanding; and the same shall be annually assessed and collected and applied to the purpose named."

It appears from the record before us that these bonds are proposed to be issued under Section 6 of H. B. No. 121, Ch. 52, p. 1953, Acts 45th Leg., 1937, 2nd C. S. We here quote that part of the above statute which directly bears on this case.

"Section 6. The County Commissioners Court shall provide for the payment of voting machines to be use in such county in such manner as the Court may deem for the best interest of the county, and for the purpose of paying for voting machines, such Commissioners Court is hereby authorized to issue bonds, and certificates of indebtedness, warrants, or other obligations to be used for this purpose and no other, which shall be a charge against the county, such bonds, certificates of indebtedness, or other obligations, may be issued with or without interest payable at such time or times as the Commissioners Court may determine, but shall never be issued nor sold for less than par; provided, however, that such Commissioners Court shall issue such bonds, certificates of indebtedness, warrants, or other obligations, to be used for the purpose of payment of voting machines in the same manner and which the same authority as provided for the issuance of warrants, bonds, certificates of indebtedness, or other obliagtions, by the General Laws of this State. The necessary tax shall be set aside at the

time of creating such obligation so as to meet the debt provisions of the Constitution; * * *"

It appears that all proceedings necessary and proper for the issuance of these bonds have been had in due form and order. It further appears that the Attorney General should approve these bonds, unless he is justified in refusing to do so on grounds we shall now set out and discuss.

As we interpret his answer and argument, the Attorney General refuses to approve these bonds because he is of the opinion that no part of the General Fund Tax of Twenty-five Cents authorized to be levied by counties for "county purposes" by Section 9 of Article VIII of our State Constitution can be pledged for the payment of obligations or bonds maturing beyond the current year for which such tax was levied. In this connection, we quote, omitting formal parts, the letter written by the Attorney General to the County Judge of Bexar County, declining to approve these bonds, and giving the reason therefor:

"In Re: Voting Machine Bonds of Bexar
County, Texas, Series 1941
$197,000.00.

"We have carefully considered the above proposed issue of bonds and in view of the fact that a portion of the constitutional 25¢ general fund tax is sought to be levied in payment of such bonds we must advise that such bonds cannot be approved.

"It is the opinion of this department that the general fund of a county cannot in any part be pledged to the payment of obligations or bonds, the maturities of which extend beyond the current fiscal year, and for a number of years we have consistently declined to approve such attempted pledges."

So far as is pertinent to this case, Section 9 of Article VIII of our State Constitution provides:

"* * * no county * * * shall levy more than twenty-five cents for * * * county purposes * * * on the one hundred dollars valuation, * * *"

It is too evident to admit of debate that the holding or con-

ducting of elections is a county purpose within the meaning of the above-quoted constitutional provision. Voting machines are proper and constitutional instruments to use in holding elections. Wood v. State, 133 Texas 110, 126 S. W. (2d) 4. It follows that money spent by a county for voting machines would be money spent for county purposes. We do not undersand that the Attorney General questions the above conclusions.

The statute under consideration here expressly authorizes commissioners' courts to purchase voting machines and pay therefor "in such manner as the court may deem for the best interest of the county," etc. Also, such statute expressly authorizes commissioners' courts "to issue bonds" to pay for such voting machines, and to make same a charge against the county. The statute does not in express words provide that the bonds issued thereunder shall be a charge against the general fund; but, in our opinion, it does so provide by necessary implication. This must be true because the Legislature by enacting the statute here involved has provided for the expenditure of county funds for a county purpose. Such expenditures does not come or fall under any purpose for which a special fund has been provided. All county expenditures lawfully authorized to be made by a county must be paid out of the county's general fund unless there is some law which makes them a charge against a special fund. Williams v. Carroll (Civ. App.), 182 S. W. 29. Since this statute authorizes the county to purchase voting machines and pay for same by issuing bonds to be serviced by tax charged against the twenty-five cents general fund tax provided by Section 9 of Article VIII of our Constitution, there is but one question to be decided in this case, viz.: In a statute authorizing the issuance of bonds running over a series of years, payable out of the county's general revenue fund provided by Section 9 of Article VIII of our Constitution, violative of such constitutional provision merely because such bonds are payable during fiscal years subsequent to the fiscal year of issuance? Stated in another way: Is a statute which authorizes the general fund of a county to be pledged for the payment of obligations violative of Section 9 of Article VIII of our Constitution merely because such obligations mature beyond the current fiscal year in which such tax is levied?

■ In our opinion, our decisions have already settled it as the law of this State that the general fund tax of twenty-five cents, authorized to be levied by counties for "county purposes" by

Section 9 of Article VIII of our Constitution, can be pledged for the payment of obligations or bonds, the maturities of which extend beyond the current fiscal year for which said tax was levied. It follows that the statute under consideration here, which authorizes bonds to be issued payable over a series of years out of a county's general fund tax, does not violate the above constitutional provision. Cass County v. Wilbarger County (Civ. App.), 60 S. W. 988 (writ refused) ; Hidalgo County v. Haney (Civ. App.), 67 S. W. (2d) 409.

In Cass County v. Wilbarger County, supra, the validity of an Act passed at the Regular Session of the Twenty-first Legislature, 1889, p. 89, was involved. Such Act authorized the commissioners' court of any county to fund any existing indebtedness lawfully made prior to January 1, 1889, into bonds running twenty years. Such Act expressly provided that "nothing herein shall be construed to authorize any county to levy any tax in excess of that authorized by the Constitution and laws now in force." The effect of this restrictive provision was to compel warrants or bonds issued thereunder to be charged against existing powers of taxation. Acting under this law, Wilbarger County issued $20,000.00 in bonds, running twenty years, to pay off that amount in outstanding warrants theretofore issued against the general fund of the county. The bonds were to be serviced out of the same fund by the levy of a tax of five cents. This levy, of course, had to be charged against the twenty-five cents tax authorized by Section 9 of Article VIII of our Constitution. It was contended that the commissioners' court had no power to fix such a charge against such tax. In other words, it was contended that the twenty-five cents tax authorized by the above constitutional provision for "county purposes" was intended to be reserved by the Constitution to meet the annual expenses of the county government." The opinion expressly rejects such contention, and holds that such bonds could be charged to and paid out of the twenty-five cents tax above mentioned. To our minds, the opinion under consideration settles this case adversely to the contention of the Attorney General. We here call attention to the fact that this Court refused writ of error in the above case, thereby approving the opinion. The Attorney General argues that the ruling in Cass County v. Wilbarger County, supra, is not conclusive here, because the bonds involved in that case were issued to take up and fund warrants already outstanding. We are unable to follow this argument. The only question here involved is the power of the commissioners' court to charge the twenty-five cents tax

authorized by Section 9 of Article VIII of our Constitution with obligations payable beyond the current year for which such tax is levied; and as to that power no difference can exist between warrants and bonds running beyond the current year. The only material difference between warrants and bonds is that warrants are not negotiable, while bonds are.

In Hidalgo County v. Haney, supra, the San Antonio Court of Civil Appeals had before it for decision the validity of $30,000.00 in county warrants payable out of the twenty-five cents general fund of the county, running over a number of of' years, issued by Hidalgo County for tick eradication purposes by authority of Section 5 of H. B. No. 77, Ch. 53, Gen. Laws, 41st Leg., 1929, p. 128 (Article 1525c, Section 5, Vernon's Penal Code, 1936). We shall not attempt a full discussion of this opinion. It is sufficient to say that it upholds the power of the Legislature to provide for the issuance of the warrants just described.

In the case of Bexar County v. Hatley, 136 Texas 354, 150 S. W. (2d) 980, 984, this Court had before it the contract for the purchase of these very bonds. In that case we upheld the validity of these bonds by necessary implication. This is true because in that case we upheld the contract to rent these voting machines, which contract contained an option to purchase. The contract was so drawn that the rental provision could not be enforced unless the option to purchase provision could also be enforced. The option to purchase expressly provided for payment in bonds, to be serviced out of the twenty-five cents general tax authorized by Section 9, Article VIII of our Constitution. The bonds here sought to be issued are the very bonds provided for in that contract.

When we approach this case as an original question we are unable to find any words in the constituitonal provision involved which limit the power of a county to levy taxes thereunder for the current year only. The constitutional provision itself simply limits the power to "county purposes." Nothing is said about the current year, and certainly the decisions of this State have declined to read that provision into it. The only provision in our Constitution which limits the power to levy the twenty-five cents tax authorized by the constitutional provision under discussion for debts payable beyond the current year, is Section 7 of Article XI, which provides: "But no debt for any purpose shall ever be incurred in any manner by any * * * county

unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund." This last-mentioned constitutional provision has been complied with in the order authorizing the issuance of these bonds.

Finally, we wish to say that the Attorney General makes no contention in this case that the issuance of these bonds as a charge against the general funds of Bexar County for future years will render that county insolvent for such years, and neither is it contended that the appropriation of such funds for such years will render it impossible for the county to operate.

It is ordered that the mandamus shall issue as prayed for by the relator.

Opinion delivered December 17, 1941.