

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
VICKXXWXXXXXX
ATTORNEY GENERAL

Honorable John R. Shook
Criminal District Attorney
Bexar County
San Antonio, Texas

Attention:  Mr. L. J. Gittinger
            First Assistant

Dear Sir:

Opinion No. 0-6819
Re: Adoption of special budget under
H.B. 240, Acts 49th Legis.; is-
suance of time warrants for cur-
rent expenses of county; and in-
crease in salaries of county em-
ployees

        We acknowledge receipt of your opinion request of September 11, 1945, reading in part as follows:

        "The 49th Legislature of Texas, at its regular
session, passed S.B. No. 246, effecting counties of
not less than 300,000 nor more than 500,000 popula-
tion, which Act under your Opinion No. 0-6721, ap-
proved July 24, 1945, became effective June 2, 1945.

        "Said Legislature also passed H.B. No. 240,
under which Act the Auditor of Bexar County became
the Budget Officer of said County instead of the
County Judge.

        "Bexar County has been operating its Budget in
compliance with the provisions of Article 689a, ex-
cept that it has used the fiscal year from August 1
to July 31, rather than the calendar year as its Bud-
get year.  In 1940, this office in response to a re-
quest for an opinion from The Honorable Charles W.
Anderson, County Judge of Bexar County, ruled that the
fiscal year under the terms of Article 689a should
begin on the 1st day of January and end on the 31st
day of the following December of each succeeding
year.  The Attorney General of the State of Texas had,
before that time, ruled that the calendar year
should be the fiscal year and the Budget year of
counties of a population bracket of Bexar County.  In

spite of these rulings, however, the Budgets were made for the fiscal year, August 1 to July 31, as above set out.

"On account of the provisions of H.B. No. 240 and the existing conditions in Bexar County, a hiatus was created from the period of August 1, 1945 to January 1, 1946, in which period no Budget existed for Bexar County, the Budget under which it had been operating ending July 31, 1945. The matter having been presented to us, we ruled that it was the duty of the County Judge of Bexar County to make an amended or supplemental budget to the 1944-1945 Budget, as we doubted the authority of the Auditor to make a Budget, except for the calendar year of 1946, and subsequent calendar year, under the provisions of said H.B. No. 240. We also held that the ad valorem taxes for 1945 collected during the months of October, November and December 1945, should be held and used for the purpose of creating a pay-as-you-go Budget for 1946, in accordance with the provisions of H.B. No. 240; a copy of the above mentioned opinion is created hereto.

"In accordance with such opinions, the County Judge has prepared an amended or supplemental budget in order that the duties and functions of Bexar County and its offices may be carried on during said interim period.

"In passing on the provisions of S.B. No. 246, this office held that the mandatory pay increase provided in said Bill applied only to the officers named in said Act and their employees, deputies and assistants. A copy of this opinion is attached hereto for your consideration.

"Again acting upon said opinion and doubtless because it was felt that a great many employees of Bexar County, equally deserving of increases in salary, had been denied such increases because of S.B. No. 246, the Commissioners' Court of Bexar County provided pay increase for all employees which were set up in the interim budget prepared by the County Judge. In order to finance said pay increases and other expenses of Bexar County, said Commissioners' Court voted to issue Time Warrants not to exceed the amount of $365,000.00. This budget substantially provides for increases in salary for employees, who

were not included under the provisions of S.B. No. 246, and contains, in addition, a new budget object which was not included in the 1944-1945 Budget.

"The anticipated revenue in said amended or supplemental budget, together with the unexpended balance in the General Fund for 1944-1945, being insufficient to pay the anticipated expenses of the County during the five month period, from August 1, 1945 to January 1, 1946, by $175,000.00, the Commissioners' Court voted to issue said $365,000.00 in Time Warrants to be issued only, if, as and when needed, the receipts of the sale of such Time Warrants being set up in the Budget as anticipated revenue.

"Bexar County has a Special Hospital Tax, under the provisions of which the people of Bexar County, by special election, voted to levy 10¢ on the $100.00 valuation to establish and maintain a county hospital. This hospital tax is levied in addition to such part of the annual 25¢ constitutional General Fund levy as the Commissioners' Court deems necessary and the total of the General Fund levy and Special Hospital levy exceeds 25¢ per $100.00 valuation in the 1944-1945 Budget.

"While I do not have the opinion before me, it is my impression that the Attorney General has previously held that said 10¢ levy was not constitutional.

"At least a portion of the anticipated receipts from the sale of the Time Warrants was set aside as receipts or revenues for said county hospital and was so set up on the interim budget as a part of the anticipated receipts for said hospital. Another portion of such anticipated receipts from the issuance of such Time Warrants was set up as anticipated receipts accruing to the Jury Fund. Another portion of such anticipated receipts was set up on said Budget as anticipated receipts or revenue for the City-County T.B. Control Board, which latter expenditure was not included in the 1944-1945 Budget, but which Board was created by Act of the 49th Legislature, known as S.B. No. 339.

"At the creation of said interim budget, this office verbally advised the County Judge and the Commissioners' Court that some sort of measuring stick should be adopted in making said Budget, and suggested that the 1944-1945 Budget be divided by

12 and that this amount be multiplied by the number of months provided for in said interim budget ------ in other words that 5/12 of the 1944-1945 Budget be set up in the interim budget to cover the anticipated expenses during the period from August 1, 1945 to January 1, 1946. In many instances in said Budget, this amount has been exceeded not only for the offices named in S. B. No. 246, but also for other offices and institutions not affected by S.B. No. 246, as we construe it.

"In the light of the foregoing, we now desire to ask the following questions:

"(1) Can Time Warrants be authorized and issued under such circumstances before a debt has actually been created. In other words, is it not necessary that script be first issued and registered and that such Time Warrants be then used to retire said script?

"(2) Can Time Warrants be issued to be payable out of the General Fund for a hospital created and to be maintained out of a Special Fund Levy when the total of the General Fund Levy and Hospital Levy exceed the 25¢ levy provided by the Constitution?

"(3) Can Time Warrants be issued, payable out of the General Fund proceeds of which Time Warrants will be transferred to the constitutional Jury Fund?

"(4) Can Time Warrants be issued out of the General Fund, the revenue of which will be transferred to an object or purpose not included in the 1944-1945 Budget, but which object or purpose was set up in the amended or supplemental budget, such new budget purpose being created by statute passed after the adoption of the 1944-1945 Budget and before the adoption of the interim budget?

"(5) Can the Commissioners' Court, in said amended or supplemental Budget, increase the salaries of employees, assistants and deputies of officers not named in S.B. No. 246, for the interim period from August 1, 1945, to January 1, 1946, or should the appropria-

tions provided in said interim budget be
limited to 5/12 of the amounts set up in the
1944-1945 Budget?

"(6) Can the Commissioners' Court in said
interim budget increase the appropriations
for the officers provided in S.B. No. 246,
beyond 5/12 of the 1944-1945 Budget, plus
15%, such 15% to be based on the pay roll
of the particular office as of March 1,
1945, under said S. B. No. 246?

".....

We will answer your questions in the order in which
they are asked.

I.

We answer the first part of your first question "No".
We answer the second part of your first question "Yes".

The issuance of time warrants is governed by the Bond
and Warrant Law of 1931. Article 2368, V.A.C.S. That statute
defines time warrants as "any warrant issued by a city or county
not payable out of current funds". In order to create such an
obligation against the general fund of the county, the commis-
sioners' court must be expressly or impliedly authorized by statute
to do so. Adams vs. McGill, 146 S.W. (2d) 332, error refused;
Bexar County vs. Mann, 138 Tex. 99, 157 S.W. (2d) 134. In the
latter case, the authority to issue bonds and allocate a portion
of the 25¢ General Fund Tax as a sinking fund, for the purpose
of buying voting machines was authorized by Art. 2997a, Sec. 6,
V.A.C.S. This statute expressly provides that the bond moneys
are "to be used for this purpose and no other." There is not
only no statute authorizing the issuance of bonds or time war-
rants for the purpose of paying current operating expenses but
the Bond and Warrant Law (Art. 2368a, V.A.C.S.) and the "pay as
you go" budget law (H.B. No. 240) contain provisions which are
inconsistent with such a practice. This budget law does not even
authorize "emergency expenditures in case of grave public neces-
sity" as does Art. 689a-11, V.A.C.S. It expressly provides that
the "amounts budgeted for current expenditures from the various
funds of the county shall not exceed the balance in said funds
as of January 1st, plus the anticipated revenue for the current
year for which the budget is made, as estimated by the county
auditor". If this formula is followed, there can be no necessity
for and, therefore, no implied authority for a mortgage on the
future revenues of the county to pay current operating expenses.
Adams vs. McGill, 146 S.W. (2d) 332, error refused; Foreman vs.
Gooch, 184 S.W. (2d) 481, error refused, want of merit.

The supposed necessity for issuing time warrants mentioned in your letter is probably predicated on your opinion dated June 15, 1945, to Hon. Edgar Garvey, Bexar County Auditor, in which you hold that the "current collections made from the tax levy in October, 1945, and collected during the months of October, November, and December, 1945, have to be set aside for the January Budget", and cannot be used for paying obligations arising under the 1945 budget. It is our view that all taxes collected from the 1945 levy are to be considered as current revenue for the purpose of paying the obligations incurred under the 1945 budget. You are correct in advising the County Judge, Charles W. Anderson, in your letter of July 13, 1945, that "the fiscal year under the terms of Art. 689a should begin on the 1st day of January and end on the 31st day of the following December of each succeeding year". This department made that ruling in its Opinion No. 0-2324, which was issued on May 20, 1940. Under Article 689a-9-11, V.A.C.S., the budget which is prepared in July and adopted in August seems to be tied to the tax levy made in August for taxes which are to become due and payable on October 1st. This is made manifest by that part of Article 689a-11 reading as follows:

"When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court."

The budget referred to here is the budget for the following calendar year. The taxes levied in August on the basis of the August budget are taxes which in contemplation of Article 689a are to be applied to the expenditures for the following calendar year. This practice of levying taxes in August for use in the following calendar year worked well in practice until the Legislature passed Article 7255b, V.A.C.S., allowing a discount on ad valorem taxes paid in advance. Prior to this law, most of the taxes levied in August were paid in January of the following year, immediately before they became delinquent on February 1st, Article 7336, V.A.C.S. After enactment of Article 7255b, the bulk of taxes levied in August are paid in October, November and December following, in order to take advantage of the discount. If Article 689a, V.A.C.S. was the budget law under which Bexar County is presently operating, we would be inclined to agree with your opinion holding that taxes collected in October, November and December, 1945, should be impounded for use in 1946.

H.B. 240, however, is now the budget law applicable to Bexar County and it became effective April 9, 1945. It expressly repeals "all laws and parts of laws in conflict" with it. It au-

thorizes the county auditor to prepare a budget in January "to
cover all proposed expenditures of the County Government for the
current fiscal and calendar year". This new budget law does not
tie the budget to any particular tax levy. In this respect, it
is in conflict with the general county budget law (Art. 689a,
V.A.C.S.) and therefore repeals it. When your Commissioners'
Court levied the taxes which became due and payable October 1st,
it was operating under H.B. 240 and not under Art. 689a, 9-11,
V.A.C.S. It is true that H.B. 240 seems to contemplate that the
counties included in the Act shall start on a "pay as you go"
basis as of January 1, 1946, but there is nothing in the Act
which ties the 1946 budget to the 1945 taxes or gives any authority
for impounding the taxes paid between October 1 and December 31
for use in 1946. The 1946 budget will be based on "the balances
in said funds as of January 1, plus the anticipated revenue for
the current year for which the budget is made, as estimated by
the county auditor." The "anticipated revenue for the current
year for which the budget is made" means 1946 revenue and not
1945 revenue.

If you will use your 1945 taxes to meet the obligations
incurred during the calendar year 1945, evidently sufficient
funds to pay all obligations incurred in 1945, which are properly
chargeable to current funds, will be available.

II.

We answer your second question "No".

You are correct in saying that this office has previ-
ously held that the 10¢ hospital levy was unconstitutional. We
held this in our Opinion No. 0-2599 which was issued to Hon. E.
G. Garvey, County Auditor of Bexar County, on September 6, 1940.
The reason for this holding was that Section 1 of Article 4437a,
V.A.C.S. was a special or local law, the enactment of which was
prohibited by Section 56 of Article 3 of the Texas Constitution.
The last Legislature, however, amended Article 4437a, V.A.C.S.,
so that it now applies to "all counties in Texas having a popu-
lation of 200,000 or more inhabitants as shown by the last pre-
ceding Federal Census, in which are established hospitals jointly
owned and operated by any city and county in which said hospital
is located. . . . ." Sec. 3 of Art. 4437a was also amended to
read as follows:

"Sec. 3. A direct tax of not over 20¢ on the
valuation of $100.00 may be authorized and levied
by the Commissioners' Court of such county for the
purpose of erecting buildings or other improvements
and for operating and maintaining such hospital; pro-
vided that all such levy of taxes shall be submitted

to the qualified taxpaying voters of the county, and
a majority vote shall be necessary to levy the tax.
Successive elections may be held to authorize addi-
tional taxes hereunder provided the total tax shall
not exceed the maximum of 20¢ per $100.00 valuation,
as hereinabove provided." See S.B. No. 339, Ch. 295,
Acts 49th Legis., Reg. Sess., 1945, Vernon's Texas
Session Laws.

According to a certificate of election which is on file
in the office of the Secretary of State, the qualified taxpaying
voters of Bexar County at a special election held on July 25, 1945,
authorized the Commissioners' Court to levy the 20¢ tax on the
$100.00 valuation for construction and maintenance of hospitals.
This 20¢ tax authorization is in lieu of the 10¢ tax which the
Legislature undertook to authorize in Articles 4437a and 4437b,
V.A.C.S.

We have also learned from the Secretary of State that
since the special election on July 25, 1945, you held another
special election in Bexar County on August 25, 1945, for the pur-
pose of reallocating the constitutional tax rates as authorized
by Article 8, Sec. 9 of the Texas Constitution. At this election,
the majority votes were "cast for the proposition authorizing
the Commissioners' Court of Bexar County, Texas, to reallocate
the Eighty Cents (80¢) constitutional maximum county tax upon
the One Hundred Dollars ($100) valuation authorized by Section 9
of Article 8 of the Constitution of the State of Texas by changing
the rate provided for county purposes from Twenty-five cents
(25¢) to Forty-six Cents (46¢) on the One Hundred Dollars($100)
valuation; by authorizing for roads and bridges Fifteen Cents
(15¢) on the One Hundred Dollars ($100) valuation; by changing
the rate to pay jurors from Fifteen Cents (15¢) to Five Cents
(5¢) on the One Hundred Dollars ($100) valuation and by changing
the rate for the erection of public buildings, streets, sewers,
water works and other permanent improvements from Twenty-five
Cents (25¢) to Fourteen Cents (14¢) on the One Hundred Dollars
($100) valuation."

We are advised that an order has been entered by the
Commissioners' Court levying taxes according to the new rates.
The General Fund levy is, therefore, now 46¢ instead of 25¢ on
the $100 valuation.

### III.

We answer your 3rd question "No". Carroll vs. Williams,
109 Texas, 155, 202 S.W. 504, cited by you in your letter.

### IV.

We answer your 4th question "No" for the reason that time warrants cannot be issued under the circumstances mentioned in your letter.

V.

(a) We answer the first part of your 5th question "Yes"; provided, that the salaries of employees not named in Senate Bill 246 shall not be increased beyond the maximum salaries now provided by statute for such positions; and provided that such salary increases operate from the date of the order entered by the Commissioners' Court. If a particular employee is not covered by S.B. 246, and he is getting the maximum salary now provided by statute for the position he holds, he could not receive an increase from the Commissioners' Court. If he is not being paid the maximum salary provided for by law for the position he holds, he can receive an increase in salary up to such maximum salary, if the Commissioners' Court enters an order for such increase, provided the increase does not exceed 15% based on the March, 1945, payroll for such position. Before the passage of S.B. 246, the County Auditor of McLennan County asked us this question:

"The other question is whether or not when a county is unable to retain experienced personnel at the salary schedule set up in a budget, would an emergency amendment to the budget be justified under the provisions of Art. 689a-11?"

In our Opinion No. 0-5184, we answered the question as follows:

"Whether or not the situations presented in your inquiry are such as can be classified as a grave public necessity requiring emergency expenditures under the budget law so as to permit the commissioners' court to amend the budget, is a question of fact primarily to be passed upon by the commissioners' court."

Since that opinion was issued on May 8, 1943, the Legislature has provided in S.B. 246 for a 15% pay increase for certain county employees and authorized the budget to be amended for that purpose. In Sec. 13 of S.B. 246, the Legislature found that "the further fact that increased living cost and taxes have greatly increased the living expenses of the employees, deputies and assistants of the county officers named, so that said officers are having difficulty in keeping adequate staffs of trained personnel, creates an emergency and an imperative public necessity, etc." If the Legislature found that an emergency existed with reference to the employees named in the Act, we are unable to say that the

Commissioners' Court of ᴮexar County could not find that a similar emergency exists with reference to the county employees not named in the Act, so as to authorize a wage increase as to all county employees.

In no event, however, can employees not named in S.B. 246 receive an increase in salary for any period prior to the adoption of an interim or supplementary budget.

(b) We answer the second part of your 5th question "No". The Commissioners' Court has authority to provide for emergency expenditures involved in increased salaries if such increased expenditures can be paid out of "current funds."

VI.

We answer your 6th question "No". We have held in our Opinion No. 0-6728 that Senate Bill 246 became effective on June 2, 1945, and is applicable to Bexar County.

Section 4 of that Act provides:

"The Commissioners' Court of each of said counties shall grant an increase in the employees' salary budget <u>and amend said budget</u> for the necessary amount for all of said county offices named in Sections 1 and 2 above, equal to fifteen (15%) per cent increase in the salary of all the employees, deputies and assistants for all of said offices, based on the pay roll of the particular office as of March, 1945. The salaries of the officials named in this Act shall not be increased beyond the salaries fixed in this Act. . . . ."

It is clear that the officers whose salaries are fixed by S.B. 246 do not receive the 15% increase provided for in Sec. 4. The Legislature finding that all 15% increase in the salaries of the employees of the officers named in S.B. 246 is necessary is in effect a finding that a 15% increase is sufficient. We do not believe the Commissioners' Court would be authorized to increase the salaries of employees more than 15%, based on the March 1945 pay roll, and we can see no reason for adopting a budget for a particular office beyond that necessary to pay the increase in salaries provided for in Senate Bill No. 246. We are not prepared to say, however, that the Commissioners' Court is bound, in preparing an interim budget, by the budget which ended July 31, 1945. There is actually no specific statute covering your particular situation. H.B. No. 240 became effective on April 9, 1945, but its provisions with reference to preparing a budget seem to be operative only after January 1, 1946. It however repeals "all laws and parts of laws in conflict" with it.

Articles 689a-9 to 11, V.A.C.S., are in conflict with H.B. 240, insofar as they authorize the County Judge, instead of the County Auditor, to prepare a budget for Bexar County.

It is primarily the responsibility of the Commissioners' Court to adopt a budget. If the county auditor prepares the interim budget the Commissioners' Court, under H.B. 240, can make "such changes in the budget as in its judgment the facts and the law warrant and the interest of the taxpayers demand", so long as the current expenditures do not exceed the current revenues as defined in that law. If, however, the county judge had prepared and the Commissioners' Court had adopted a budget under Art. 689a-9 to 11, V.A.C.S., for the calendar year 1945, we believe that it could now be amended by the Commissioners' Court. S.B. No. 246 expressly provides in Section 4, copied on page 11 above, that the budget shall be amended to provide for the 15% salary increase. So, regardless of who the Commissioners' Court designates to prepare the interim budget, we believe that the amended or supplemental budget previously prepared should be revised in accordance with this opinion and that an interim budget should be adopted as soon as possible.

Trusting that we have satisfactorily answered your questions, we are

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By s/Fagan Dickson
   Fagan Dickson
   Assistant

FD:rt:wc

APPROVED OCT 2, 1945
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/JAE Chairman