

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 29, 1951

Hon. A. K. Stewart          Opinion No. V-1359
County Attorney
Montgomery County           Re: Legality of using coun-
Conroe, Texas                   ty permanent improvement
                                funds to remove brush
                                and trees from the coun-
Dear Mr. Stewart:               ty airport.

Your request for an opinion is as fol-
lows:

"During the years of 1942 and 1943,
Montgomery County constructed an airport
which was later taken over by the Federal
Government for the duration of the war.
When World War II was over, the Federal
Government turned said airport back over
to Montgomery County. During these years,
trees and underbrush were allowed to grow
on the airport and now have grown to such
an extent that it becomes necessary that
they be removed.

"The Commissioners' Court of this
County has requested an opinion as to
whether or not the payment for the re-
moval of the trees and underbrush from
the airport may be made from the county
permanent improvement fund."

Section 2a of Article 1269h, V.C.S., author-
izing the establishment of a county airport, provides:

"For the purpose of condemning or
purchasing, either or both, lands to be
used and maintained as provided in Section
1 hereof, and improving and equipping the
same for such use, the governing body of
any city or the Commissioners Court of
any county, falling within the terms of
such Section, may issue negotiable bonds
of the city or of the county, as the case
may be, and levy taxes to provide for the

interest and sinking funds of any
such bonds so issued, the authority
hereby given for the issuance of such
bonds and levy and collection of such
taxes to be exercised in accordance
with the provisions of Chapter 1 of
Title 22 of the Revised Civil Statutes
of 1925."

Section 4 of Article 1269h, V.C.S., pro-
vides:

"That in addition to and exclusive
of any taxes which may be levied for the
interest and sinking fund of any bonds is-
sued under the authority of this Act, the
governing body of any city or the Commis-
sioners' Court of any county, falling
within the terms hereof, may and is here-
by empowered to levy and collect a special
tax not to exceed for any one year five
cents on each One Hundred Dollars for the
purpose of improving, operating, maintain-
ing and conducting any Air Port which such
city or county may acquire under the pro-
vision of this Act, and to provide all
suitable structures, and facilities there-
in. Provided that nothing in this Act
shall be construed as authorizing any city
or county to exceed the limits of indebt-
edness placed upon it under the Constitu-
tion."

Section 9, Article VIII of the Constitu-
tion of the State of Texas provides in part:

"The State tax on property, exclus-
ive of the tax necessary to pay the pub-
lic debt, and of the taxes provided for
the benefit of the public free schools,
shall never exceed thirty-five (35) cents
on the one hundred dollars valuation; and
no county, city or town shall levy more
than twenty-five (25) cents for city or
county purposes, and not exceeding fifteen
(15) cents for roads and bridges, and not
exceeding fifteen (15) cents to pay jurors,
on the one hundred dollars valuation, ex-
cept for the payment of debts incurred

prior to the adoption of the Amendment
September 25, 1883; and for the erec-
tion of public buildings, streets, sew-
ers, waterworks and other permanent im-
provements, not to exceed twenty-five
(25) cents on the one hundred dollars
valuation, in any one year, and except
as is in this Constitution otherwise
provided; . . ."  (Emphasis added.)

In Bexar County v. Mann, 138 Tex. 99,
157 S.W.2d 134 (1941), the Court said:

"All county expenditures lawful-
ly authorized to be made by a county
must be paid out of the county's gen-
eral fund unless there is some law which
makes them a charge against a special
fund."

This office held in Attorney General's
Opinion 0-6762 (1945) that structural improvement
done on the runways of a county airport would be
in the nature of a permanent improvement and could
be paid for from the permanent improvement fund.
This opinion further states:

"It is our opinion that the expendi-
tures for salaries should be allocated
as a part of the levy for general pur-
poses, and in no event should such allo-
cations have the effect of increasing the
total levy for general purposes beyond
the constitutional limits for such pur-
poses.

"Also, we point out that the total
amount of the allocation or levy for the
purposes of improving, operating, main-
taining and conducting the airport, and
to provide suitable structures and facil-
ities therein should not exceed for any
one year the limit of five (5) cents on
the one hundred dollars valuation, even
though a part of such amount may be al-
located as a part of the levy for general
purposes and a part allocated as the levy
for permanent improvement."

In a similar situation, this office held that the purchase and improvement of a county park should be paid from the county permanent improvement fund, but the day-by-day operating and maintenance expense should be charged to the general fund.  Att'y Gen. Ops. V-284 (1947) and O-1082 (1939).

In Attorney General's Opinion V-744 (1948) it is stated:

"Tax levied for park improvements is a charge against the county permanent improvement fund and that levied for maintenance is a charge against the county general fund."

From the facts set out in your request we see that the operation of clearing the brush is not for the purpose of establishing the airport or improving the property in connection with establishing the airport.  It is an operation of maintenance, and is not a permanent improvement as contemplated by Section 9, Article VIII of the Constitution of the State of Texas.

The law is well settled that the commissioners' court cannot levy a tax for one purpose and use the money for another.  It has no power to transfer moneys raised under constitutional levies from one fund to another.  Ault v. Hill County, 102 Tex. 335, 116 S.W. 359 (1909); Sanders v. Looney, 225 S.W. 280 (Tex. Civ. App. 1920); Att'y Gen. Op. O-5595 (1945).  In Carroll v. Williams, 109 Tex. 155, 202 S.W. 504, 509 (1918), the Court stated:

"Taxes levied ostensibly for any specific purpose or class of purposes designated in section 9 of article VIII, supra, must be applied thereunto, in good faith; and in no event and under no circumstances may there be expended, legally, for one such purpose or class of purposes, tax money in excess of the amount raised by taxation declaredly for that particular purpose or class of purposes."

It is therefore our opinion that moneys in the county permanent improvement fund must be

expended solely for permanent improvements and may not be spent to clear brush and trees from the county airport when this clearance is not of the nature of a permanent improvement as contemplated by Section 9, Article VIII of the Constitution of the State of Texas.

## SUMMARY

Funds in the county permanent improvement fund must be spent solely for permanent improvements and may not be expended for the purpose of clearing brush and trees from a county airport when this work is not of the nature of a permanent improvement as authorized by Section 9, Article VIII of the Constitution of Texas.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

RHH:mh

Yours very truly,

PRICE DANIEL
Attorney General

By

Robert H. Hughes
Assistant